IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| CLEVERT LEE TYLER | § | |
| VS. | § | CIVIL ACTION NO.  1:19-cv-308 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner Clevert Lee Tyler, a prisoner confined at the Gib Lewis Unit of the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se*, filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

The Petition was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Factual Background

Petitioner is in custody pursuant to a judgment entered in the Criminal District Court of Jefferson County, Texas, in cause number 12-14509.  Petitioner was charged with the first degree felony offense of murder, enhanced by two prior felony convictions.  The indictment charged that Petitioner intentionally and knowingly caused the death of Sheila Denise Vallian by shooting the victim with a deadly weapon.  (Doc. #15-1 at 10.)  A jury trial commenced on June 3, 2013. (Doc. #15-1 at 12.)  Due to Petitioner's behavior in the courtroom, the court ordered a competency evaluation. (Doc. #15-1 at 83.) On June 17, 2013, the court found that Petitioner was not competent to stand trial, Petitioner was committed to a mental health facility for treatment to restore his competency, and a mistrial was declared.  (Doc. #15-1 at 85-87.)  On July 22, 2015, Petitioner was

found competent to stand trial. (Doc. #15-1 at 13.) On January 19, 2016, the trial court ordered another competency evaluation at defense counsel's request. (Doc. #15-2 at 16-17.) Following the evaluation, Petitioner was found to be competent by a mental health professional (Doc. #15-2 at 32), and the case was set for trial.

The jury trial commenced on July 11, 2016. (Doc. #15-1 at 14.) The jury found Petitioner guilty of murder. (Doc. #15-2 at 155.) On July 14, 2016, Petitioner was sentenced to life imprisonment and fined $10,000, in accordance with the jury's verdict. (Doc. #15-2 at 176-78.)

Petitioner filed a Notice of Appeal (Doc. #15-2 at 183). Petitioner raised three issues on direct appeal. Petitioner raised two claims concerning the sufficiency of the evidence, and he also argued that the trial court abused its discretion by denying Petitioner's request for a jury instruction for the lesser included offense of manslaughter. (Doc. #15-12 at 3.) The Ninth Court of Appeals summarized the evidence as follows:

> Angie Conley, a Beaumont 911 dispatch supervisor, testified that on or about June 12, 2012, she received a call through the 911 system from a person who identified himself as Tyler, and Conley dispatched officers to 1208 Harrison Street in reference to the call. A recording of the 911 call was admitted into evidence and published to the jury. In the recording played for the jury, the caller reported that he had just killed his girlfriend by shooting her "between the eyes with a 9."
>
> Officer Matthew Bean with the Beaumont Police Department testified that on or about the evening of June 12, 2012, he was an officer with the street crimes unit and was dispatched to 1208 Harrison Street in reference to a shooting. Officer Bean testified he came into contact with Tyler in the back yard of the residence and ordered Tyler to the ground for the safety of the officers at the scene. According to Officer Bean, after Tyler complied and was placed in handcuffs, Officer Bean located a pistol on top of the trunk of a vehicle in the driveway area and officers read Tyler his Miranda rights. Officer Bean testified that Tyler attempted to direct the officers to the location of the victim's body, but the officers could not discern the directions. According to Officer Bean, Tyler accompanied the officers in a patrol car and guided them to a remote location where the officers located the victim's deceased body

face-down in the roadway with blood pooled around her head. Officer Bean testified that he learned from other officers that the victim was S.V.

S.V.'s twenty-five-year-old daughter, J.A., testified that she went to her mother's home in Beaumont on the morning of June 12, 2012, and that at that time her mother lived about a block away from Tyler, whom her mother had been dating for almost a month. According to J.A., she had stopped by her mother's home because her mother was concerned about text messages sent by Tyler. J.A. testified that on that morning her mother seemed nervous and scared of Tyler, and J.A. advised her mother before leaving that she should leave Tyler alone. J.A. testified that after she got home from work that evening, she went to her grandmother's home and received a disturbing call from her sister regarding their mother. According to J.A., she and her grandmother went to S.V.'s home and saw police cars at Tyler's home. J.A. testified she was concerned and went to talk to the police, who asked her to go back home and wait. J.A. testified that she learned from law enforcement later that night that her mother had been a victim of a possible homicide.

S.B., Tyler's niece, testified that Tyler was living with her grandmother at 1208 Harrison Street on or about June 12, 2012, and that S.B. had been at the house all day. According to S.B., Tyler and his girlfriend, S.V., were at the house that day for a couple of hours, and Tyler had told S.B. that he thought S.V. was cheating on him. S.B. testified that she witnessed them talking outside and Tyler was being "stern[ ]" and "[g]etting that point across." S.B. testified that Tyler seemed "[k]ind of aggravated[,]" and S.V. seemed "[t]imid." S.B. testified that Tyler had a gun in his pants that day, and although she did not remember him pulling the gun out, she acknowledged at trial that in her statement to law enforcement she had reported that Tyler waived a gun in S.V.'s face and then put it back in his pants. According to S.B., Tyler then started drinking beer with a smirk on his face.

According to S.B.'s statement, before Tyler and S.V. left, Tyler asked S.V. to go into the bathroom, S.V. looked scared, they argued in the bathroom, S.V. left the bathroom and looked like she was crying, S.V. left the house, Tyler stayed in the bathroom a little longer, and then Tyler also left the house. S.B. acknowledged at trial that at the time Tyler felt like S.B. was taking S.V.'s "side[,]" that Tyler told S.B. that she should be on "his side[ ]" because they were family, and S.B. told Tyler that "right is right and wrong is wrong[.]"

Stacie Gardener testified that on June 12, 2012, she was a crime scene technician with the Beaumont Police Department and was dispatched to 1208 Harrison in regards to a victim of a shooting. Video recordings and photos taken by law enforcement of 1208 Harrison after the 911 call and the scene where the body was located were admitted into evidence. She testified that there was a 9mm gun on the trunk of a vehicle "in a driveway that was kind of far back from the house[.]"

Gardener testified that Tyler said that between the time he shot S.V. and when the gunshot residue kit had been administered on him he had driven a car, smoked a cigarette, and drank a beer.

Officer Christopher Daniels with the Beaumont Police Department testified that he responded to 1208 Harrison Street and read Tyler his Miranda warnings. Daniels testified that his patrol car video system recorded Tyler being transported to where Tyler said the body was located. According to Officer Daniels, Tyler said that he "murdered somebody[,]" he and S.V. had had an argument, and he shot her between the eyes. The patrol car video recording was admitted and played for the jury. Officer Daniels testified that he retrieved a spent 9mm casing from near S.V.'s body.

Officer Robert Riley, who was a police officer with the Beaumont Police Department in 2012, testified that he arrived at 1208 Harrison Street after Tyler had been read his Miranda warnings. According to Officer Riley, Tyler said he had murdered his girlfriend by shooting her and that he could take the officers to where the body was located, which was about three-fourths of a mile away. Officer Riley testified that Tyler was taken to the Beaumont Police Department to speak to detectives and that he appeared calm during the recorded interview. According to Officer Riley's report, Tyler stated that when he realized he had pulled the trigger he blacked out and went into shock.

Detective Charla Phillips with the Beaumont Police Department testified that she arrived on the scene at about ten o'clock at night on June 12, 2012, she was advised to go to the station, and she learned that Tyler wanted to speak with detectives. Detective Phillips testified that Tyler was given his Miranda warnings, stated that he understood the warnings, signed the warnings, and voluntarily agreed to an interview by Detective Phillips and Detective Pratt. According to Detective Phillips, Tyler told them that he murdered S.V. Detective Pratt testified that Tyler appeared to be honest and calm during the interview. According to Detective Pratt, Tyler stated that S.V. dropped to her knees and raised her hands prior to him pulling the trigger.

Juan Rojas, a trace evidence examiner with the Texas Department of Public Safety Crime Lab, testified that he tested the gunshot residue kit in this case collected from Tyler, and the kit tested positive for gunshot residue. Sue Kelly, a crime scene technician for the Beaumont Police Department, testified that she attended the autopsy of S.V. and took photographs. According to Kelly, the photographs she took show that S.V. had a wound to her forehead, and the doctor performing the autopsy removed a bullet from S.V.'s head and gave it to Kelly for evidentiary purposes. Deputy Bradley Bruns with the Harris County Sheriff's Department testified that in 2012 he was a firearms and tool mark examiner, he examined the 9mm firearm and the shell casing recovered in this case, and that, in his opinion, the shell casing was fired from the 9mm firearm submitted for testing.

> Tyler testified that he was diagnosed with schizophrenia, has problems with his memory and has blackouts, hears voices, and "experience[s] extreme paranoid thoughts." According to Tyler, he did not remember all of the events on the day of S.V.'s death, but that he remembered that he intended "to scare her and not to shoot her and all of a sudden the gun just went off." He testified he did not remember pulling the trigger and he explained he was "deeply remorseful."

*Tyler v. State*, No. 09-16-00253-CR, 2018 WL 1188817, at *1-3 (Tex. App.–Beaumont Mar. 7, 2018, no pet.). The court of appeals found that the evidence was sufficient to support Petitioner's conviction, and that the trial court did not abuse its discretion by denying Petitioner's request for a jury instruction for a lesser included offense. Accordingly, the court of appeals affirmed the judgment. Petitioner filed an untimely *pro se* Petition for Discretionary Review, which was not ruled on by the Texas Court of Criminal Appeals. (Doc. #15-17.)

Petitioner filed a state application for habeas relief. On July 3, 2019, the Texas Court of Criminal Appeals denied the application without written order. (Doc. #27-1 at 4.)

<u>The Petition</u>

Petitioner contends his attorney provided ineffective assistance by: (1) failing to fully explore Petitioner's competency to stand trial and to request a competency hearing; (2) failing to call Petitioner's treating physician to testify at sentencing; (3) failing to investigate and prepare a defense; (4) failing to submit evidence of Petitioner's mental illness; (5) rejecting plea agreement without Petitioner's consent; (6) failing to investigate ballistics results and cross-examine a witness regarding the results; (7) failing to present evidence that someone else was the killer; (8) failing to request a psychiatric examination to determine whether Petitioner was sane at the time of the offense; (9) failing to present DNA evidence to prove the victim was not in Petitioner's car on the night of the murder; (10) failing to introduce fingerprint evidence showing Petitioner's fingerprints were not

on the firearm or the bullets; (11) failing to introduce gunshot residue results excluding Petitioner as the person who fired the weapon; (12) failing to introduce evidence of errors in the ballistics report; (13) failing to make a voice comparison between Petitioner's voice and the voice on the 911 call; and (14) failing to disclose an expert report. Petitioner claims the trial court abused its discretion by failing to hold a competency hearing and by failing to instruct the jury on the lesser included offense of manslaughter. Petitioner contends there is insufficient evidence to support his conviction.

<u>Standard of Review</u>

Title 28 U.S.C. § 2254 authorizes the district court to entertain a petition for writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The court may not grant relief on any claim that was adjudicated in state court proceedings unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;[1] or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court reaches a conclusion opposite to a decision reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An application of clearly established federal law is unreasonable if the state court identifies

---

[1] In making this determination, federal courts may consider only the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

the correct governing legal principle, but unreasonably applies that principle to the facts. *Id.* State court decisions must be given the benefit of the doubt. *Renico v. Lett*, 559 U.S. 766, 773 (2010).

The question for federal review is not whether the state court decision was incorrect, but whether it was unreasonable, which is a substantially higher threshold. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). If the decision of the highest state court is not accompanied by an explanation of the court's reasoning, federal courts must look to the last state court decision that does provide an explanation for the decision. *Wilson v. Sellers*, __ U.S. __, 138 S. Ct. 1188, 1192 (2018). There is a rebuttable presumption that the unexplained ruling adopted the same reasoning. *Id.* "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011); *see also Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

This court must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). The presumption of correctness applies to both implicit and explicit factual findings. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Deference to the factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez*, 274 F.3d at 951 (holding that "a full and fair

hearing is not a precondition to according § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review.").

Analysis

*I. Insufficient Evidence*

Claims regarding sufficiency of the evidence are reviewed under the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). The inquiry to be used with such claims is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 320.

On direct appeal, Petitioner argued that there was insufficient evidence to prove beyond a reasonable doubt that he knowingly and intentionally committed the offense of murder. *See* TEX. PENAL CODE ANN. § 19.02(b)(1). The Ninth Court of Appeals, which was the last state court to issue a reasoned opinion regarding the sufficiency of the evidence, summarized the evidence as set forth above, and concluded that the evidence was sufficient to support Petitioner's conviction for murder.

The state court's determination was not contrary to, and did not involve an unreasonable application of, clearly established federal law. Nor did it result in a decision that was based on an unreasonable determination of the facts. Viewing the evidence in the light most favorable to the jury's verdict, the jury could have found beyond a reasonable doubt that Petitioner intentionally and knowingly killed the victim. Although Petitioner testified that the victim's death was accidental, the jury was not required to accept that testimony as credible. Thus, Petitioner is not entitled to federal habeas relief on his claim regarding the sufficiency of the evidence.

8

## II. Ineffective Assistance of Counsel

Petitioner alleges that he was denied the effective assistance of counsel. In order to establish an ineffective assistance of counsel claim, Petitioner must prove counsel's performance was deficient, and the deficient performance prejudiced Petitioner's defense. *Strickland v. Washington*, 466 U.S. 668 (1984). Because Petitioner must prove both deficient performance and prejudice, failure to prove either will be fatal to his claim. *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995).

Judicial review of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. There is a strong presumption that counsel rendered reasonable, professional assistance and that the challenged conduct was the result of a reasoned strategy. *Id*. To overcome the presumption that counsel provided reasonably effective assistance, Petitioner must prove his attorney's performance was objectively unreasonable in light of the facts of Petitioner's case, viewed as of the time of the attorney's conduct. *Id*. at 689-90. A reasonable professional judgment to pursue a certain strategy should not be second-guessed. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

In addition to demonstrating counsel's performance was deficient, Petitioner must also show prejudice resulting from counsel's inadequate performance. *Strickland*, 466 U.S. at 691-92. Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Petitioner must show a substantial likelihood that the result would have been different if counsel performed competently. *Richter*, 562 U.S. at 112. To determine whether Petitioner was prejudiced, the court must consider the totality of the evidence before the fact-finder. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010).

9

Analysis of an ineffective assistance claim on federal habeas review of a state court conviction is not the same as a claim adjudicated on direct review of a federal conviction. *Richter*, 562 U.S. at 101. The key question on habeas review is not whether counsel's performance fell below the *Strickland* standard, but whether the state court's application of *Strickland* was unreasonable. *Id*. Even if Petitioner has a strong case for granting relief, that does not mean the state court was unreasonable in denying relief. *Id*. at 102.

### A. Failing to Raise Competency Issues

Petitioner alleges his attorney failed to fully investigate Petitioner's competency and to request a competency hearing prior to his trial. Petitioner also contends that the trial court abused its discretion by failing to hold a competency hearing.

A criminal defendant must be mentally competent in order to stand trial. *Dunn v. Johnson*, 162 F.3d 302, 305 (5th Cir. 1998). To be competent, the defendant must be able to understand the nature and object of the proceedings, consult with counsel, and assist in preparing a defense. *Dusky v. United States*, 362 U.S. 402, 402 (1960); *United States v. Flores-Martinez*, 677 F.3d 699, 705 (5th Cir. 2012). This standard applies whether the defendant pleads guilty or stands trial. *Godinez v. Moran*, 509 U.S. 389, 398 (1993). Further, on habeas review, the petitioner "must show that the facts are 'sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt' as to his mental competency at the time of trial." *Dunn*, 162 F.3d at 306 (quoting *Bruce v. Estelle*, 536 F.2d 1051, 1058-59 (5th Cir. 1976)).

The record reflects that Petitioner's competency was raised during his first trial. That trial ended in a mistrial after the trial court concluded that Petitioner was not competent to stand trial. Petitioner was then committed to a hospital for two years before medical professionals determined

that he was restored to competency.  Prior to Petitioner's second trial, defense counsel requested

another competency evaluation, which the trial court granted.  The psychiatrist who examined

Petitioner found that he was competent to stand trial, and the case was set for trial.

During the state habeas proceedings, the trial court addressed the claims concerning

Petitioner's competency.  The trial court summarized the efforts taken to ensure Petitioner was

competent to stand trial and made the following findings:

> 20.  Regarding the allegations . . . this Court finds them to be incredible, and to be
> directly refuted by the official record contained in this Court's files in the underlying
> cause, all of which indicate applicant was restored to competency prior to his July 11-
> 14, 2016 jury trial; re-determined to be competent by Dr. Gripon following his
> February 4, 2016 examination; and, remained competent to stand trial throughout
> said trial in the underlying cause; thus, these allegations are without merit and all
> habeas relief based thereon should be denied.

> 21.  This Court further notices that prior to the start of applicant's 2016 trial, the
> presiding judge briefly revisited the procedural history of applicant's competency
> matters, and recognized the last [July 2015] NTSH report and the results of Dr.
> Gripon's February 2016 examination, from which the Court conclud[ed] that "the
> defendant continues to be competent to proceed to a resolution of this legal issue[;]"
> and, this Court also notices that neither party objected to the NTSH 2015 report or
> Dr. Gripon's February 2016 report being admitted as trial exhibits, and that neither
> party raised any other matter when asked by the judge prior to having the venire
> brought into the courtroom for commencement of voir dire.  [See 2RR4-5.]

> 22.  Additionally, this Court finds that applicant has not presented this Court with any
> newly acquired, credible, probative medical evidence calling into question either the
> NTSH-doctors' July 2015 evaluations or Dr. Gripon's February 2016 professional
> opinion, both of which determined that applicant was mentally competent to stand
> trial.

(Doc. #15-22 at 3-4.)

Petitioner has not shown that counsel performed deficiently by failing to argue that Petitioner

was not competent to stand trial.  Nor has he shown that the trial court erred by failing to hold a

competency hearing prior to the second trial.  Petitioner was evaluated, and mental health

professionals determined that Petitioner had been restored to competency prior to his second trial. There is nothing in the record to suggest that Petitioner was unable to understand the nature of his proceedings or assist his attorney in preparing a defense at the time of his second trial. Therefore, Petitioner is not entitled to relief on these claims.

### B. Failing to Call Physician to Testify

Petitioner contends his attorney should have called Petitioner's treating physician to testify at sentencing about his mental illness. Complaints about the failure to call witnesses are disfavored in habeas petitions because allegations of potential testimony are largely speculative, and the presentation of witnesses is generally a matter of trial strategy. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009); *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). Petitioner must identify the witness, explain the content of the witness's proposed testimony, show that the testimony would have been favorable to a particular defense, and demonstrate that the witness would have testified at trial. *Day*, 566 F.3d at 538. Generally, relief will not be granted where the only evidence of the potential witness's testimony comes from the petitioner. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001).

Petitioner's assertion that his treating physician would have testified favorably to the defense is speculative. During the state habeas proceedings, defense counsel submitted an affidavit in which he states: "I did not call Dr. Gripon at punishment to explore Mr. Tyler's mental state as, through conversations with Dr. Gripon, I felt that his testimony would not help Mr. Tyler." (Doc. #15-27 at 33.) The trial court found counsel's affidavit was credible. (Doc. #15-22 at 5.) The trial court also found that Petitioner failed to provide specific evidence that could have been provided by the

physician, and that such evidence would have changed the outcome of the trial. (Doc. #15-22 at 6-7.)

Petitioner's unsupported allegations regarding an uncalled witness are insufficient to overcome the strong presumption that counsel provided effective assistance of counsel. Further, Petitioner has failed to demonstrate that he was prejudiced by counsel's failure to present testimony from his treating physician. Therefore, the state court's rejection of this claim is not contrary to, and does not involve an unreasonable application of, clearly established federal law. Nor did the state court's findings result in a decision based on an unreasonable determination of the facts in light of the evidence.

### C.  Failure to Investigate, Consult with Petitioner, and Prepare for Trial

Petitioner contends that his attorney's investigation and trial preparation were inadequate, in general. Petitioner specifically asserts his attorney should have requested a psychiatric examination to determine whether Petitioner was sane at the time of the offense. In a related ground, Petitioner contends his attorney should have presented evidence of Petitioner's mental illness at trial.

An attorney is required to conduct a reasonable amount of pre-trial investigation. *Lockhart*, 782 F.2d at 1282. However, the defense of a criminal case does not "contemplate the employment of wholly unlimited time and resources." *Smith v. Collins*, 977 F.2d 951, 960 (5th Cir. 1992). An attorney is not necessarily ineffective for failing to investigate every conceivable, potentially non-frivolous matter. *Id.* Petitioner must allege "with specificity" the information that additional investigation would have revealed and demonstrate that it would have changed the outcome of the trial. *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010).

During the state court proceedings, the trial court reviewed these claims and made extensive

findings of fact and conclusions of law.  The trial court found:

> 30.  In conclusory fashion, applicant claims counsel performed deficiently by having no defense strategy, by failing to sufficiently prepare for trial to counter the State's "damaging expert testimony," and failing to conduct effective cross-examination. Applicant also claims counsel was deficient for failing to raise an insanity defense, and again complains of counsel's failure to use applicant's mental health history for punishment mitigation purposes.

> 31.  The following portions of trial counsel's affidavit, which this Court finds credible, address his trial strategy and preparation:

>> I was retained by the family of Clevert Tyler on June 27, 2012.  From my initial meeting with Mr. Tyler, his recollection of the facts were that he shot Ms. Valens by accident, he only meant to scare her, not actually shoot and kill her.  I prepared for the case for Trial and conducted all examinations to comply with my theory that he was reckless in all his actions up to and including the death of [the victim, S.V.].  At every visit I would prepare Mr. Tyler for his testimony. This was important as I knew I would need to develop his reckless acts through his testimony.  I prepared for Trial and conducted the trial with this in my mind.

>> ************

>> [Following Mr. Tyler's restoration to competency,] [h]is case was immediately set to be tried and was tried on July 11, 2016.  At the jail, Mr. Tyler was competent, knowledgeable and assisted in preparation for his trial on the theory of recklessness.  He understood he would need to testify to lay the groundwork for a lesser included charge.  After the State rested, Mr. Tyler informed me he would not testify.  Mr. Tyler was adamant about not testifying.  This decision destroyed my trial strategy of laying the case for a lesser included charge thr[ough] Mr. Tyler.  I planned on exploring his mental history and perceptions of what he was understanding and thinking that day. I felt fleshing out his past would strengthen his case.  This front loading of the mitigating factors, I felt, would be beneficial to Mr. Tyler.  I did not call Dr. Gripon at punishment to explore Mr. Tyler's mental state as, through conversations with Dr. Gripon, I felt that his testimony would not help Mr. Tyler.

> After discussions Mr. Tyler agreed to testify, but stated his memory was unreliable. I called Mr. Tyler and had a very limited examination.
>
> . . . .

32. This Court notices the fact that included with his affidavit, trial counsel provided this Court with a "banker's box" containing what appears to be his "file" in applicant's underlying Murder cause.

33. From the portion of counsel's affidavit reproduced above, from what is contained in counsel's very extensive "file," from what appears in the appellate record, and from the lack of credible, probative controverting facts or evidence provided to this Court by applicant, this Court finds applicant has failed to demonstrate, by a preponderance of the evidence, any deficiency in trial counsel's performance with regard to trial preparation or trial strategy; and, further finds that any failure by trial counsel to implement his reasonable "lesser included/recklessness" trial strategy was the fault of applicant for choosing to reject counsel's reasonable trial strategy at the 11th-hour in favor of applicant's unreasonable, incredible, and self-serving "lost-memory" strategy. . . .

34. With regard to counsel's alleged failure to raise an insanity defense, this Court finds applicant has failed to provide any evidence indicating that, at the time of the offense, applicant did not know his conduct was wrong due to his suffering from a severe mental disease or defect. . . .

. . . .

36. Having examined the evidence in the appellate record and in the instant habeas record, this Court finds no credible evidence to indicate applicant was suffering from a mental disease or defect at the time of the murder; and, that all the credible evidence of applicant's mental illness–*i.e.*, mental illness diagnosed by a licensed mental-health professional–began with Dr. Gripon's June 6, 2013, examination and determination that applicant was incompetent to stand trial.

37. Regarding applicant's sanity at the time of the murder, among the items of credible evidence in the instant habeas record [Court's exhibits] are two investigative-reports from Beaumont Police Department [BPD] officers who encountered applicant shortly after the shooting, following his arrest, to whom applicant stated that he knew that shooting his girlfriend, the victim, between the eyes was wrong.

. . . .

42.   Thus, from trial counsel's own records, which this Court finds to be credible, it is sufficiently established that on August 30, 2015, trial counsel spent some portion of a three-hour meeting with applicant discussing applicant's sanity at the time of the shooting, among other of applicant's mental health issues.

43.   From the foregoing, this Court finds that applicant failed to provide any evidence to indicate that at the time he murdered the victim, applicant was suffering from a mental disease or defect from which he did not know his shooting of the victim was illegal.

44.   And, having considered the evidence that appears in both the appellate record and the instant habeas record, this Court finds that trial counsel was fully knowledgeable of applicant's mental-health history, and had conducted a reasonably sufficient investigation of applicant's mental health history; that counsel adequately informed and discussed the insanity defense with applicant prior to trial; and, that based on applicant's mental-health history taken in light of applicant's otherwise sane and competent mental state at the time of the shooting, as evidenced by his video-recorded statement, his various conversations with law enforcement personnel shortly after the shooting, and the absence of any credible evidence to the contrary, trial counsel's decision to forgo urging an insanity defense in the underlying Murder case was reasonable trial strategy and not deficient performance.

(Doc. #15-22 at 8-12.)  The trial court also found that defense counsel did not perform deficiently by failing to seek a psychiatric examination to determine whether Petitioner was insane at the time of the offense.  (Doc. #15-22 at 22-23.)

Petitioner has not demonstrated that counsel performed deficiently in his investigation of the case, his pre-trial preparation, or his failure to develop and present evidence of Petitioner's mental illness.  There is no indication from the record that additional investigation or preparation would have located evidence or witnesses that could be used to aid Petitioner's defense.  "Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."  *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998).  The state court's conclusion that counsel provided effective assistance with respect to pre-trial investigation,

preparation, and development of a defense strategy is a reasonable application of *Strickland*.  As a result, Petitioner is not entitled to relief on these grounds.

    *D.  Rejecting Plea Agreement*

    Petitioner alleges that the State offered Petitioner a plea agreement for a 25-year prison sentence. Petitioner claims defense counsel rejected the States's offer without Petitioner's consent.

    The state court record reflects that defense counsel moved for a continuance of the trial on March 4, 2016.  (Doc. #15-2 at 26-27.)  In the motion, defense counsel stated that one prosecutor informally extended a plea offer during a time when there was a question as to whether Petitioner was competent.  Defense counsel stated that he conveyed the offer to Petitioner, but it was not formally accepted at that time due to the questions regarding Petitioner's competence.  On March 3, 2016, defense counsel discovered that Dr. Gripon had found Petitioner was competent, and Petitioner accepted the 25-year plea offer.  On March 4, 2016, defense counsel was informed by a different prosecutor that there was no plea offer.  On the order resetting the trial, a court employee noted, "State to withdraw plea offer."  (Doc. #15-2 at 33.)

    During the state habeas proceedings, the trial court reviewed defense counsel's billable hours and found notations indicating that counsel had likely discussed the plea offer with Petitioner on several occasions.  (Doc. #15-22 at 16.)  In his affidavit, defense counsel acknowledged that there was a plea bargain rejection in his file, but said that it was a reminder to himself, and it was never filed with the court.  (Doc. #15-27 at 26.)  The trial court found that defense counsel's version of the events was credible, and that Petitioner's version was not credible.  (Doc. #15-22 at 17.)  The trial court found that defense counsel did not unilaterally reject the State's plea offer of 25 years, that counsel discussed the offer with Petitioner and Petitioner accepted the offer, but the State either

withdrew the offer or indicated to counsel that there was no offer. (Doc. #15-22 at 17.) By denying relief without written order, the Texas Court of Criminal Appeals adopted the findings and conclusions of the trial court.

This Court must accept the state court's findings of fact as correct, unless Petitioner rebuts the presumption of correctness by clear and convincing evidence. Petitioner points to the plea bargain rejection in defense counsel's file as evidence that his counsel did, in fact, unilaterally reject the plea agreement, but the trial court found counsel's explanation regarding the document to be credible. Because Petitioner has not presented clear and convincing evidence that defense counsel rejected the plea agreement, this court must accept as correct the state court's findings of fact. Based on the factual findings of the state court, counsel did not perform deficiently by unilaterally rejecting a plea agreement. The state court's application of *Strickland* was reasonable, and Petitioner is not entitled to relief on this ground.

E. *Failing to Investigate Ballistics Results*

Petitioner contends that the characteristics of the bullet recovered from the victim did not match the characteristics of Petitioner's firearm, as documented by the initial report of a ballistics expert. The expert witness subsequently re-examined the recovered bullet under higher magnification and amended his report to reflect that the barrel rifling of the bullet was 3 lands and grooves with a left twist, instead of 9 lands and grooves with a left twist that was in the initial report. The barrel rifling of Petitioner's firearm was 3 lands and grooves, which did not eliminate Petitioner's firearm as the weapon used in the offense. Petitioner contends trial counsel should have investigated the discrepancies in the reports, cross-examined the firearms expert, and introduced evidence of the error in the ballistics report.

18

These issues were addressed at length in the trial court's findings and conclusions from the state court habeas proceedings.  The trial court found:

> 64.  Ground 7's [ineffective assistance of counsel] specific complaint is based on the fact that [Harris County Sheriff's Office Deputy Bradley Bruns'] initial report of his examination of State's Exhibit 9, the bullet recovered from the victim's head during the autopsy, contained a mistake with regard to the number of lands and grooves observed on said bullet; said report, dated December 13, 2012, listed the number of barrel-rifling as "9L."  [See applicant's Exhibit G]

> 65.  Deputy Bruns' mistake on his December 13, 2012, report was fully explored by the State during its direct examination, and by trial counsel on cross-examination; and, that, as Deputy Bruns explained, he re-examined the recovered bullet under "higher magnification" and determined that the barrel-rifling on said bullet was indeed only "3," as was the rifling-number determined by Brandy Henley of the Jefferson County Regional Crime Lab per her July 31, 2012, report.  [4RR 145-146]

> 66.  Deputy Bruns then issued an "Amended" report, dated June 11, 2013, which includes the following pertinent information:  "Amended report indicated that the rifling characteristic for Item 37 [one fired bullet] w[as] changed from 9 lands and grooves with a left twist to 3 lands and grooves with a left twist."  [See applicant's Exhibit E, second page]

> 67.  This Court finds that both the State and trial counsel fully explored Deputy Bruns' mistake before the jury; and, that the uncontroverted trial evidence established applicant's .9mm firearm to be "rifled with three (3) lands and grooves inclined to the left."  [July 31, 2012, report of Brandy Henley]; and, applicant provides this Court with no credible forensics evidence to the contrary.

> 68.  From the foregoing, this Court concludes that Ground 7's deficient-performance allegations are without merit when considered in light of the well-established *Strickland*-standard.

### Ground 8

> 69.  Ground 8 alleges that Deputy Bruns' testimony included a determination indicating that a bullet test-fired from applicant's .9mm firearm "did not have the individual characteristics to make a positive match to applicant's weapon[,]" referencing to 4RR146 of the appellate record, and that trial counsel failed to "subject the prosecutions [sic] case to meaningful adversarial testing."

70.   The testimony to which applicant refers relates to the fact that the bullet recovered from the victim's head during the autopsy was deformed by having struck the victim's skull on impact; however, Deputy Bruns testified that, notwithstanding the bullet's deformity, he was still able to determine it "had the three lands and grooves compared to the three lands and grooves with [applicant's] firearm[.]" [See 4RR146-147]

71.   Under Ground 8, applicant fails to specify in what manner trial counsel should have further subjected the State's case to adversarial testing.

72.   From the foregoing, this Court concludes that Ground 8's deficient-performance allegations are without merit when considered in light of the well-established *Strickland*-standard.

. . . .

### Ground 14

103.   Ground 14's allegations are essentially the same as the allegations set out in Ground 7 with regard to Deputy Bruns' mistaken ballistics results appearing in his December 13, 2012, report [applicant's Exhibit G], and the correct ballistics results that appear in his amended report dated June 11, 2013 [applicant's Exhibit E]. However, here, applicant insists, without reference to any record-evidence, that his .9mm handgun has a rifling characteristic of 9 lands and grooves, instead of the 3 lands and grooves as determined by both Deputy Bruns and by Brandy Henley of the Jefferson County Regional Crime Lab. . . .

104.   Applicant cites to his Exhibit E, Bruns' correct amended report and to his Exhibit H, a single page from Bruns' December 13, 2012, report upon which appears five separate close-up photographs of the items forwarded to him for ballistics testing–the .9mm handgun and clip with close-up of serial number; the seven live rounds; the spent shell casing; and the deformed bullet.

105.   This Court finds that applicant does not clearly and concisely explain how the contents of either his Exhibit E and Exhibit H provide evidentiary support for his repeated assertion that his .9mm handgun has a 9 lands and grooves rifling characteristic, instead of the scientifically established 3 lands and grooves. . . .

. . . .

20

<u>Ground 15</u>

107.  Ground 15's [ineffective assistance of counsel] allegations are essentially identical to the [ineffective assistance of counsel] allegations set out in Ground 7 and Ground 14, alleging counsel failed to disclose to the jury the purported conflicts in the ballistics test results from Brandy Henley's report, finding applicant's handgun has a 3 lands and [grooves] rifling characteristic [applicant's Exhibit F], compared to applicant's naked assertion that his .9mm handgun has a 9 lands and grooves rifling characteristic.

(Doc. #15-22 at 18-20, 28-30.)

Petitioner has not demonstrated that counsel failed to investigate and present the ballistics evidence or that he failed to cross-examine the State's expert.  The trial transcript shows that the firearms expert was questioned both on direct-examination and on cross-examination about the discrepancies between the reports.  Petitioner has not identified any additional information that defense counsel could have discovered through further investigation of the ballistics evidence. Petitioner also failed to show that counsel could have elicited helpful testimony by conducting a more extensive cross-examination of the expert.  In addition to his failure to demonstrate that counsel performed deficiently, Petitioner has failed to show that he was prejudiced by defense counsel's investigation and cross-examination in connection with the ballistics evidence.  Therefore, the state court's rejection of these claims is not contrary to, and does not involve an unreasonable application of, clearly established federal law.  Nor did the state court's findings result in a decision based on an unreasonable determination of the facts in light of the evidence.

*F.  Failing to Present Evidence that Another Person Killed the Victim*

Petitioner claims defense counsel should have presented evidence that somebody else killed the victim.  This claim was denied during the state habeas proceedings because "[the] Court has failed to locate evidence in any form–DNA, forensic, ballistic–that shows applicant did not murder

the victim; and applicant fails to provide this Court with the name of the person he asserts is the actual killer." (Doc. #15-22 at 21.) The trial court found that the exhibits submitted by Petitioner in support of his claim of innocence were not exculpatory, did not reasonably call into question Petitioner's guilt, and did not point to another person as the perpetrator of the offense. (Doc. #15-22 at 21-22.) The trial court concluded that counsel did not perform deficiently by failing to present evidence of a different perpetrator to the jury. (Doc. #15-22 at 22.)

Petitioner failed to present any evidence that suggested another person was the perpetrator of the offense. "Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998). Petitioner also failed to show that he was prejudiced by counsel's performance because there was no evidence suggesting that someone else killed the victim. As a result, the state court's denial of this claim is a reasonable application of *Strickland*.

### G. Failing to Present DNA Report

Petitioner claims defense counsel failed to present DNA evidence that the victim was not in Petitioner's car on the night she was murdered. This claim is based on a supplemental DNA laboratory report which concluded that the victim was excluded as a contributor to the DNA profile obtained from a swab of the inside front passenger seat and console of Petitioner's car. The trial court noted that the DNA report was not admitted at trial, but found that, in light of the evidence supporting Petitioner's conviction, the DNA report would not have changed the outcome of the trial. (Doc. #15-22 at 24.)

Petitioner failed to demonstrate that counsel's failure to introduce the DNA laboratory report into evidence was an unreasonable trial strategy, or that Petitioner was harmed because the jury was

not presented with the evidence. Because Petitioner failed to prove either deficient performance or prejudice, the state court correctly concluded that this claim of ineffective assistance lacks merit.

### H.  Failing to Introduce Fingerprint Evidence

Petitioner alleges that counsel failed to introduce evidence that the crime scene technician was unable to get fingerprints from Petitioner's firearm or the live rounds in the firearm. This claim is factually incorrect because the crime scene technician testified at trial that she was unable to retrieve fingerprints from the firearm or the live rounds. (Doc. #15-5 at 123, 124, and 146.)

### I.  Failing to Introduce Gunshot Residue Results

Petitioner contends that defense counsel failed to introduce evidence of gunshot residue analysis that allegedly excluded Petitioner as the person who fired the firearm. The trial court considered this claim and found that Petitioner's claim of deficient performance lacked merit. (Doc. #15-22 at 28.)

The state court records reveal that the report prepared by the trace evidence examiner, Juan Rojas, was admitted as State's Exhibit 166 at trial. (Doc. #15-6 at 75; Doc. #15-10 at 35.) Mr. Rojas testified that he tested a sample from Petitioner, and it was positive for gunshot primer residue particles. (Doc. #15-6 at 70, 73.) The testimony and the report reflected that a positive test could mean that the person recently: (1) fired a weapon, (2) was in the immediate proximity of a weapon as it was fired; and/or (3) contacted a surface with primer residue particles. (Doc. #15-6 at 75.) Contrary to Petitioner's assertion, the report itself does not exclude him as the person who fired the firearm. (Doc. #15-10 at 35.) Further, defense counsel extensively cross-examined Mr. Rojas regarding potential contamination of the sample and alternate theories for the positive test results. (Doc. #15-6 at 76-87.)

Petitioner's claim that counsel performed deficiently lacks merit because the report did not exclude him as the shooter, the report was admitted into evidence and was available for the jury to review, and counsel throughly cross-examined the trace evidence examiner. The state court's determination that counsel did not perform deficiently with respect to the gunshot primer residue particle analysis is a reasonable application of *Strickland*.

### J. Failing to Obtain Voice Exemplar

Petitioner claims defense counsel should have obtained voice exemplar evidence to prove that he was not the 911 caller who reported the crime. On state habeas review, the trial court concluded that his claim lacks merit. The trial court found that, in light of the significant evidence of Petitioner's guilt, Petitioner was not prejudiced by counsel's failure to hire a voice exemplar expert, even if Petitioner had told counsel that it was not Petitioner's voice on the 911 call. (Doc. #15-22 at 32.) Petitioner is not entitled to relief because the state court's application of *Strickland* was reasonable with respect to this claim.

### III. Denial of Lesser-Included Offense Jury Instruction

Petitioner claims that the trial court abused its discretion by denying Petitioner's request for a jury instruction on a lesser-included offense. Petitioner contends that there was some evidence that he recklessly caused the death of the victim, and that the jury should have been instructed on the lesser-included offense of manslaughter.

A lesser-included offense instruction must be given if the jury could rationally acquit on a capital offense and convict for the non-capital offense. *East v. Scott*, 55 F.3d 996, 1005 (5th Cir. 1995). In non-capital cases, such as this one, the trial court's failure to instruct the jury on a lesser-included offense does not raise a federal constitutional issue. *Creel v. Johnson*, 162 F.3d 385, 391

(5th Cir. 1998). As a result, this claim does not provide Petitioner with a basis for federal habeas relief.

Recommendation

This Petition for Writ of Habeas Corpus should be denied.

Objections

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from the entitlement of *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of the factual findings and legal conclusions accepted by the district court, except on grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72. **SIGNED this the 10th day of August, 2022.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE